IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| QUENETTA FENDERSON and EDWARD McCURDY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACT. NO.  2:13cv51-CSC (WO) |
| ALABAMA BOARD OF PARDONS and PAROLES, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER

## I.  INTRODUCTION

In their complaint, plaintiffs Quenetta Fenderson ("Fenderson") and Edward McCurdy

("McCurdy") allege that they were the victims of discrimination when they were retaliated

against based on their involvement in protected activity in violation of Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), and 42 U.S.C. §

1981.  Also, seeking a remedy under 42 U.S.C. § 1983, they allege that they were deprived

of their equal protection and due process rights established by the Fourteenth Amendment.

Finally, they assert state law claims of negligence and breach of contract.

The court has jurisdiction of the plaintiffs' claims pursuant to its federal question

jurisdiction, 28 U.S.C. § 1331.  Similarly, the court has supplemental jurisdiction of the state

law claims under 28 U.S.C. § 1367(a).  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR

73.1, the parties have consented to a United States Magistrate Judge conducting all

proceedings in this case and ordering the entry of final judgment.

Now pending before the court are the defendants' motions for summary judgment (docs. ## 33, 36, 39 & 42).  The plaintiffs have filed responses in opposition to the motions (docs. ## 44, 45 & 47).  After careful review of the motions, the briefs filed in support of and in opposition to the motions, and the supporting and opposing evidentiary materials, the court concludes that the defendants' motions for summary judgment are due to be GRANTED, and this case is due to be dismissed.

## II.  THE SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][1] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by

---

[1]  Effective December 1, 2010, the language of Rule 56(a) was amended.  The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the defendant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to her case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine [dispute] for trial."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

To survive the defendants' properly supported motions for summary judgment, the plaintiffs are required to produce "sufficient [favorable] evidence" establishing a violation of Title VII or 42 U.S.C. § 1981. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker*

*v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his or her case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact).

### III.  FACTS

The pertinent material facts are undisputed.  The plaintiffs are currently employed by the Alabama Board of Pardons and Paroles as parole officers.  A promotional register for the position of Probation and Parole Officer Supervision/Senior was created on November 17, 2005 after the administration of promotional test 60903.  Both Fenderson and McCurdy took test 60903 and were placed on the promotional register based on their test scores.  McCurdy was promoted to the position of Senior Probation and Parole Officer on November 1, 2006, and Fenderson was promoted on February 7, 2007.

In 2012, another employee, Thomas W. Holmes ("Holmes"), filed a pro se complaint in this court alleging that he had been discriminated against based on his race, sex and age when he "was repeatedly passed over for promotion while less educated and less experienced co-workers were promoted who happened to be black, female and/or younger than myself." *Holmes v Ala. Bd. of Pardons & Paroles*, 2:12cv279-WKW (M.D. Ala. 2014), doc. # 1 at 2. Holmes also alleged in his pro se complaint that "some of those promoted were given an

unfair advantage because they were provided answers to the promotional test." *Id.*

As a result of Holmes' complaint, the State Personnel Department initiated an investigation into his cheating allegations in July 2012. (Doc. # 44, Pls' Ex. E). Defendant Jackie Graham, State Personnel Director, determined that Fenderson had failed to maintain the security of her answers on the Probation and Parole Supervisor test. (Doc. # 44, Pls' Ex. C). Fenderson denied that she had given her responses to anyone. (*Id.*) On October 22, 2012, Graham wrote a letter to Fenderson outlining the results of the investigation.

> It has come to our attention that your responses to the Probation and Parole Supervisor Experience Record Questionnaire was submitted or used by one or more persons. During a recent investigation, you were interviewed on several occasions and stated you were not sure how anyone could have obtained your responses. You also stated at least one of the persons had access to your laptop.
>
> Applicants taking the Probation and Parole Supervisor test sign an examination security agreement, certifying that the answers are their own work, which was composed without assistance from another person and failing to adhere to the security agreement may result in removal from an employment register or separation from service. Despite having certified that you would adhere to the security agreement of this test, it appears that you have assisted others with the Probation and Parole Supervisor test.
>
> Pursuant to the authority given the State Personnel Director, you can be removed from any employment register for which you filed an application containing the above-described information and can be barred from being placed on any employment register with the State of Alabama for a period of five (5) years. (R. 670-x-9-.01(3), State Personnel Board Rules). Before any decision is made however, you have the opportunity to provide a written response within ten (10) days. After reviewing all the information, you will be informed of SPD's decision.

(*Id.*; Doc. 34, Defs' Ex. 1, p. 2).

Fenderson submitted a written response in which she denied knowing how someone

obtained her responses.  (Doc. 34, Defs' Ex. 1, p. 4).  Nonetheless, on November 7, 2012, Graham removed Fenderson from any and all employment registers with the State of Alabama, and she was banned from any registers for a period of five years.  (*Id*.; Doc. # 44, Pls' Ex. D).

The State Personnel Department's investigation also implicated McCurdy.  On October 22, 2012, Graham wrote a letter to McCurdy notifying him that, based on the investigation, he was also being considered for removal from the employment registers. (Doc. 34, Defs' Ex. 1, p. 3).

> It has come to our attention that you used another individual's responses to the Probation and Parole Supervisor Experience Record Questionnaire. During a recent investigation, it was found you submitted another person's answers as your own.
>
> Applicants taking the Probation and Parole Supervisor test sign an examination security agreement, certifying that the answers are their own work, which was composed without assistance from another person and failing to adhere to the security agreement may result in removal from an employment register or separation from service.  Despite having certified that you would adhere to the security agreement of this test, it appears that the responses you submitted for the Probation and Parole Supervisor test were not your own work product.
>
> Pursuant to the authority given the State Personnel Director, you can be removed from any employment register for which you filed an application containing the above-described information and can be barred from being placed on any employment register with the State of Alabama for a period of five (5) years.  (R. 670-x-9-.01(3), State Personnel Board Rules).  Before any decision is made however, you have the opportunity to provide a written response within ten (10) days.  After reviewing all the information, you will be informed of SPD's decision.

(*Id*.).

7

McCurdy submitted a written response in which he asserted that his answers were his own.  (*Id*., at 5).  On November 7, 2012, Graham removed McCurdy from any and all employment registers with the State of Alabama, and he was removed from any registers for a period of five years.  (*Id*.).

The Alabama Board of Pardons and Paroles also instigated disciplinary action against McCurdy based on the results of the State Personnel Department's investigation.  (Doc. # 44, Pls' Ex. H).  On October 31, 2012, McCurdy's supervisor Roderick Chambers recommended that McCurdy be disciplined for his actions related to  promotional test 60903.  (Doc. # 41, Defs' Ex. E).  Chambers charged McCurdy with making false statements and falsification of records in violation of State Personnel Rules.  (*Id*).  The crux of the charges against McCurdy involved his use of someone else's answers on the promotional test.  Chambers framed the allegations as follows:

> Specifically, you offered test answers as your own on your promotional test with the State Personnel Department for Probation Officer Supervisor (60903) that you copied from another agency employee's test.  You took the PO Supervisor promotional test twice;  offering test answers dated 9-12-2005 and then 8-25-2006.  The State Personnel Department has determined that your 8-25-2006 test answers substantially match (almost word-for-word) test answers offered by Kelvin Bryant on 9-12-2005.  You were promoted to Probation and Parole Supervisor after offering answers you copied from Kelvin Bryant that were not your own.

> You signed an "examination security agreement" for both promotional tests, certifying that the answers you offered were your own work product, composed without assistance from any other individual, when, in fact the answers you offered on 8-25-2006 were almost identical to those answers offered by Kelvin Bryant on 9-12-2005.  The answers you offered were not your own work product.

You further offered false statements during the course of an investigation by State Personnel in 2012, in writing and during an in-person interview. You stated in writing on 7-30-2012 that "I did not receive any assistance from anyone with this exam" and that "I did not consult with any person prior to, while taking, nor after the exam" and that "I did not receive answers to the exam to reference" and that "I used my own answers for the exam" and that "I do not have any information or knowledge that I feel may be pertinent to this investigation" among other statements. You also made similar statements verbally during your in-person interview and stated during your interview that it was "impossible" for you to have the same answers as Kelvin Bryant (from 9-12-2005) on your 8-25-2006 test. You made these statements, knowing you had submitted test answers that were not your own work product, but were substantially the same as Kelvin Bryant's test answers from 9-12-2005 because you copied Kelvin Bryant's 9-12-2005 test answers almost work-for-word on completing your exam.

(*Id*.).

McCurdy was advised that he was recommended for demotion from his Senior Probation Officer position back to the position he previously held. (*Id*.) He was also advised of the witnesses and evidence to be presented against him and that he was entitled to a "fact-finding disciplinary hearing regarding the charge(s)." (*Id*.) A disciplinary hearing was held on November 30, 2012 before Hearing Officer Ken Fetzer. (Doc. # 41, Defs' Ex. F). McCurdy denied all charges, and was "given the opportunity to respond to each charge, each witness, and each piece of evidence offered, and was given the right to cross-examine witnesses." (*Id*.) McCurdy was also permitted to present witnesses and evidence in his defense. (*Id*.) After the hearing, the hearing officer found McCurdy guilty as stated in his findings.

Concerning the specific charges in this matter:

1-Edward McCurdy admitted in his testimony (Exhibit J) the reason his

9

second test answers were longer is because *he spoke with other officers in-between the first and second test and was told the answers he gave were too short*. Speaking with other officers about the test in enough detail to determine that his answers were too short proves the charges against him by his own admission.

      2-The test taken by Officer Bryant (exhibit F) 11 months prior to the second test taken by Officer McCurdy (Exhibit H) provides almost word for word the exact same long, intricate answers. Even the grammatical errors are the same. The chances of this happening appear to be beyond coincidence.

(*Id.*) (emphasis in original)

On December 6, 2012, McCurdy was notified that as a result of the evidence adduced at the disciplinary hearing, he was being recommended for demotion from Senior Probation Officer to his former classification as Probation and Parole Officer, Step 14, Grade 6872. (Doc. # 41, Defs' Ex. G). McCurdy was notified of his demotion on December 6, 2012, to be effective on December 16, 2012. On December 7, 2012, the State Board of Pardons and Paroles approved McCurdy's demotion. (Doc. # 41, Defs' Ex. H).

Pursuant to his request, on December 11, 2012, the State Personnel Board set a hearing to review McCurdy's demotion. (Doc. # 41, Defs' Ex. I). McCurdy and the Board of Pardons and Paroles were directed to submit written statements. (*Id.*). After oral argument and review of the underlying disciplinary hearing, the State Personnel Board upheld McCurdy's demotion. (Doc. # 41, Defs' Ex. J).

This lawsuit followed on January 23, 2013.

## IV. DISCUSSION

1.    **Count I - Equal Protection Claim.** Under the Equal Protection Clause of the

Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV § 1.  Equal protection principles require generally that government officials behave in a way such  "that all persons similarly situated should be treated alike."  *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  Thus, in order to establish a claim cognizable under the Equal Protection Clause, a plaintiff must, at the very least, allege that he or she is similarly situated with other persons who were treated differently and that the reason for the differential treatment was based on a constitutionally protected interest.  *Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001); *Damiano v. Fla. Parole & Probation Com'n*, 785 F.2d 929, 932-33 (11th Cir. 1986). Evidence which merely indicates disparity of treatment or erroneous or even arbitrary administration of state powers, rather than against instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent.  *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987).  Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. *GJR Inv., Inc. v. County of Escambia,* 132 F.3d 1359, 1367-68 (11th Cir. 1998) *overruled on other grounds, Swann v. Southern Health Partners, Inc*., 388 F.3d 834 (11th Cir. 2004); *Coon v. Ga. Pac. Corp.,* 829 F.2d 1563, 1569 (11th Cir. 1987).

Since this case is before the court on properly supported motions for summary judgment from the defendants, the plaintiffs bear the burden of producing evidence which would be admissible at trial sufficient to show that the actions of the defendants resulted from intentional discrimination.  *Celotex*, 477 U.S. at 322-324; *Waddell v. Valley Forge*

11

*Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  The plaintiffs cannot rest on

conclusory allegations of a constitutional violation to defeat summary judgment.  *Anderson*,

477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on

subjective beliefs are insufficient to oppose summary judgment).  Instead, the law is clear

that the plaintiffs must present significant probative evidence of intentional discrimination

to avoid summary judgment in favor of the defendants.  *Anderson*, 477 U.S. at 249.

In their briefs, the plaintiffs argue, in a convoluted and conclusory fashion, that the

defendants' conduct violated their equal protection rights.  Although the record clearly

establishes that, as African-Americans, the plaintiffs belong to a protected group, they have

failed to present to the court any evidence from which a reasonable jury could conclude that

they were disciplined because of their race.[2]  *See e.g., Mencer v. Hammonds,* 134 F.3d 1066,

1069 (11th Cir. 1998) (holding that a government actor cannot violate a plaintiff's equal

protection rights unless the defendant has the intent to discriminate); *Parks v. City of Warner

Robins, Ga.*, 43 F.3d 609, 616 (11th Cir. 1995) ("[P]roof of discriminatory intent or purpose

---

[2]  In brief, the plaintiffs quote ALA. CODE § 36-26-29 which states that "[n]o charges for dismissal or disciplinary action shall be preferred against any employee in the classified service of the state after the expiration of three years from the date such cause became known to the authority having the power to dismiss or discipline such employee."  According to the plaintiffs, the "[d]efendants clear and excessive violations of both State law and State policy supports Plaintiffs' arguments that their reasons provide for their actions are pretextual, and that they in fact intentionally violated Plaintiffs (sic) federally protected rights (sic) order to retaliate against Plaintiffs."  (Doc. # 47 at 13).  In support of their argument, the plaintiffs make wide sweeping statements such as "[n]otwithstanding that other similarly situated individuals employed by the State of Alabama, violated policies of the State, other individuals received timely notice and hearings."  (Doc. # 47 at 13).

Even if the defendants were aware generally of problems with promotional test 60903, the plaintiffs have presented absolutely no evidence from which the court could conclude that the defendants knew that Fenderson and McCurdy were involved in the alleged cheating on the test. Consequently, ALA. CODE § 36-26-29 is inapplicable.

is a necessary prerequisite to any Equal Protection Clause claim.").

The plaintiffs' allegations rest on supposition, and they have utterly and completely failed to present any evidence, significantly probative or otherwise, that race or some other constitutionally impermissible factor was a motivating factor in the defendants' actions of banning them from the promotional registers. Other than the plaintiffs' vague assertions that the defendants violated their equal protection rights, the record is devoid of admissible evidence that the defendants acted in an intentionally discriminatory manner against these plaintiffs. The plaintiffs do not identify a single employee who was investigated by the State Personnel Department, found to have violated the security agreement of the promotional test, and was then not disciplined for that action. The plaintiffs do not point to any evidence that suggests that their removal from the promotional registers was the result of intentional discrimination.

Moreover, the arbitrary application of administrative rules and/or state laws does not constitute a violation of the Constitution.[3] *E & T Realty v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987). In the absence of proof indicating that the plaintiffs were similarly situated to other persons, they were treated differently because of their race, or the conduct of the

---

[3] In a convoluted fashion, the plaintiffs argue that the actions against them were unlawful because the defendants had knowledge of the problems with the promotional tests several years before disciplinary action was taken against them. *See* Doc. # 47 at 13-14. The plaintiffs rely on an email dated July 25, 2012 and a memorandum from Officer Dasinger dated July 24, 2012 to assert that the defendants knew as early as 2007 that the test was compromised. *See* Doc. # 44, Ex. E and F. Their reliance on these documents is misplaced because the documents are unsworn and thus, is not consistent with FED. R. CIV. P 56(e). Furthermore, both documents are clearly hearsay, and inadmissible.

More important, there is no admissible evidence before the court to suggest that prior to the July 2012 investigation, the Alabama State Personnel Department knew of Fenderson and McCurdy's involvement in the problems with the promotional test.

defendants was intentionally discriminatory, the defendants are entitled to summary judgment as a matter of law on the plaintiffs' equal protection claims.

     **2.**     **Counts II and III - Due Process Claims.**  The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law."  U.S. CONST. AMEND. XIV, § 1.  The due process clause "provides two different kinds of constitutional protection: procedural due process and substantive due process." *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (*en banc*).  The Eleventh Circuit has decisively foreclosed  any substantive due process claims in the employment law context. *See McKinney, supra; see also Bussinger v. City of New Smyrna Beach, Fla.*, 50 F.3d 922, 925 (11th Cir. 1995); *Thornquest v. King*, 82 F.3d 1001, 1004 fn 3 (11th Cir. 1996); *Hollins v. Fulton Cty*, 422 Fed. Appx. 828, 833 (11th Cir. 2011).  Pursuant to *McKinney, supra*, the plaintiffs substantive due process claims fail as a matter of law.

     Although the factual basis of the plaintiffs' procedural due process claims is not entirely clear, it appears that they allege that they were divested of property interests in promotions when they were removed from the promotional registers in retaliation for participating in the State Personnel Department's investigation that arose out of Mr. Holmes' EEOC charge.  "A public employee has a property interest in employment if "existing rules or understandings stem from an independent source such as state law creates a legitimate claim of entitlement."  *Ross v. Clayton Cty, Ga.* 173 F.3d 1305, 1307 (11th Cir. 1999) *quoting Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577-78 (1972).  "The

hallmark of [a] property [interest] . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012) *quoting Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982). "A person claiming a property interest in a benefit "must have more than an abstract need or desire for it.... He must ... have a legitimate claim of entitlement to it." *Gray v. Bd. of Regents of the Univ. Sys. of Ga.*, 150 F.3d 1347, 1350 (11th Cir. 1998).

The plaintiffs rely on AL ADC § 670-X-9-.02(2) (1981) to assert a property interest in their placement on the promotional registers. Their reliance is misplaced. Alabama Administrative Code § 670-X-9-.02(2) provides as follows:

> (2) **Promotion Register**. The Director shall hold competitive promotional examinations which shall be open only to persons in the classified service who have held for six months or more positions which are determined by the Director to be within the lines of promotion to the class of positions for which the examination is held. Service ratings shall be a factor in promotional examinations. After each promotional examination the Director shall prepare and keep available a promotion list of persons whose final rating in the examination is not less than the passing grade established by the Director, arranged in order of ratings received. Whenever it is necessary to hold a subsequent examination in order to obtain additional eligibles for a promotion list, the Director may combine the existing list with the new list for the same class by arranging all the eligibles in the order of ratings received, without regard to the time of examination. When the work in a department is of a peculiar nature or for any other reason it can be established that it is practicable to do so, a promotion list may be confined to employees of a particular department at the discretion of the Director.

AL ADC § 670-X-9-.02(2) (1981) (amended 1991).

Nothing in this provision creates "a legitimate claim of entitlement" to placement on the promotional registers. "The viability of [the plaintiffs'] procedural due process claim

depends on whether [they] had a 'property right'" in continued placement on the registers. *See Hinson v. Clinch Cty, Ga. Bd. of Educ.*, 231 F.3d 821, 832 (11th Cir. 2000). The plaintiffs have presented no facts or law to the court which establishes that they have a property interest in being placed on or remaining on promotional registers. Consequently, the court concludes that the plaintiffs have failed to demonstrate that they had a property interest in remaining on the promotional registers, and therefore, the defendants are entitled to summary judgment on the plaintiffs' due process claims related to the promotional registers.

McCurdy also appears to allege that he was denied due process when he was demoted from his senior office position in December 2012. While McCurdy clearly has a constitutionally-protected interest in his position, he has failed to present any evidence, or point the court to any, that suggests that the state procedures governing his demotion were infirm. "[W]hen determining if a plaintiff has stated a valid procedural due process claim – look to whether the available state procedures were adequate to correct the alleged procedural deficiencies." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000). In addition, "to be adequate, the state procedure need not provide all the relief available under section 1983." *Id.*

> To state a claim under 42 U.S.C. § 1983 for denial of procedural due process, an individual must show "the state refuse[d] to provide a process sufficient to remedy the procedural deprivation." *Cotton v. Jackson*, 216 F.3d 1328, 1330-31 (11th Cir. 2000) (quotations omitted). "This rule ... recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate failings of its review boards, and state courts before being subjected to a claim alleging a procedural due process violation."

*Id* at 1331 (quotation omitted).

*East v. Clayton Cty, Ga.*, 436 Fed. Appx. 904, 912-13 (11th Cir. 2011).

McCurdy was provided written notice of the charges and a full evidentiary hearing before an impartial hearing officer prior to his demotion.  He was permitted to present and cross-examine witnesses, submit evidentiary material and challenge the evidence presented against him.  He was given and took the opportunity to appeal the demotion.  McCurdy does not identify any procedural defects in the pre- or post-deprivation state proceedings. Therefore, the court concludes that McCurdy has failed to demonstrate that he was denied due process when he was demoted. Consequently, the court concludes that the plaintiffs have failed to demonstrate that they suffered a due process violation, and the defendants are entitled to summary judgment on the plaintiffs' due process claims.

    **3.**       **Count IV - Race Discrimination Claim pursuant to 42 U.S.C. § 1981**.  The plaintiffs bring a race discrimination claim pursuant to 42 U.S.C. § 1981.[4]  While the plaintiffs recite generally the law applicable to discrimination claims brought pursuant to 42 U.S.C. § 1981, they allege absolutely no facts and make no argument in response to the

---

[4]  Section 1981 provides, in pertinent part:

(a) All persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, . . .

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981.

defendants' motion for summary judgment on their § 1981 race discrimination claim. They do not point to or otherwise provide the court with any evidence to substantiate their allegations of race discrimination. The burden is on the parties to formulate arguments and grounds alleged in the complaint but not relied upon in responding to a motion for summary judgment are deemed abandoned. *See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994). Accordingly, the court concludes that the plaintiffs have abandoned their race discrimination claims pursuant to 42 U.S.C. § 1981, and the defendants' motions for summary judgment on this claim are due to be granted.

**4.    Count V & Count VI - Retaliation Claims.** The plaintiffs assert claims of retaliation pursuant to 42 U.S.C. § 1981 and Title VII. The same prima facie elements are required to prove a 42 U.S.C. § 1981 discrimination claim as are required to prove a Title VII discrimination claim. *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989); *Brown v. American Honda Motor Co.,* 939 F.2d 946 (11th Cir. 1991). The allocation of burdens and elements of a prima facie case are the same for employment claims stemming from Title VII and section 1981. *See Richardson v. Leeds Police Dep't.,* 71 F.3d 801, 805 (11th Cir. 1995); *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1060 (11th Cir. 1994); *Howard v. BP Oil Co., Inc.,* 32 F.3d 520 (11th Cir. 1994).

Fenderson and McCurdy allege that they were removed from the promotion registers, and McCurdy alleges that he was demoted in retaliation for participating in protected activity. Employers are prohibited from discriminating against an employee who has either (1) opposed an employment practice made unlawful under Title VII or (2) made a charge, or

participated in any manner in an investigation, proceeding, or hearing under Title VII.  42 U.S.C. § 2000e-3(a).  The plaintiff may also pursue a retaliation claim under § 1981.  *See Andrews v. Lakeshore Rehabilitation Hosp.,* 140 F.3d 1405, 1409-13 (11th Cir. 1998).

In order to establish a prima facie case of retaliation, the plaintiffs must demonstrate that (1) they engaged in statutorily protected activity; (2) they suffered an adverse employment action; and (3) there is a causal relationship between the protected activity and the adverse employment action.  *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).  The causal connection requirement must be construed broadly.  *See generally E.E.O.C. v. Reichhold Chem., Inc.,* 988 F.2d 1564, 1571-72 (11th Cir. 1993) ("a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated").

> Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). And, under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.*

*E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).  *See also Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1350 (11th Cir. 1999).

According to the plaintiffs, they participated in the investigation of Holmes' EEOC charge, and their participation constituted protected activity.[5]  The plaintiffs first argue that

---

[5]  After attempting to decipher the sweeping generalizations raised by the plaintiffs in response to the motions for the summary judgment, the court is compelled to observe that in "presenting arguments to busy trial courts, subtlety is no virtue," *United States v. Reyes Vasquez*, 905 F.2d 1497, 1499 (11th Cir.

because "[t]he investigation that Plaintiffs were involved in was conducted in conjunction with and after the filing of the EEOC charge by Holmes," they are protected by the participation clause.[6]  *See* Doc. # 44 at 16.  The court disagrees.  While Holmes' EEOC charge and complaint in this court precipitated the investigation into the cheating on the promotional test, the plaintiffs did not participate in Holmes' EEOC investigation.  The plaintiffs read the participation clause too broadly.  The undisputed facts demonstrate that the State Personnel Department conducted an investigation into allegations that probation officers were exchanging information and answers about the promotional test.  The Alabama State Personnel Department was not investigating Holmes' allegations of race discrimination. This is not a case in which the plaintiffs offered statements in support of Holmes' claims of discrimination against the defendants.  In fact, the undisputed evidence demonstrates that the statements offered by the plaintiffs were specifically related to their own conduct concerning the promotional test.  Consequently, the court concludes that the plaintiffs have failed to demonstrate that they were engaged in statutorily protected activity.

However, even if the court were to conclude that the plaintiffs established a *prima facie* case of retaliation, their retaliation claims still fail.  Once the plaintiffs make out a

---

1990).  Moreover, the failure of the plaintiffs to properly identify facts and apply those facts to the applicable law in this case prompts the court to note that both clarity and preparation are virtues which should be sought by all advocates.

[6]  The plaintiffs state in a conclusory fashion that they "testified in support of Holmes (sic) claims of race discrimination and were retaliated against as described here in for testifying in support of Holmes (sic) claims of race discrimination."  (Doc. # 47 at 27).  The plaintiffs point the court to *no* facts in support of this assertion.  There is absolutely no admissible evidence before the court that the plaintiffs testified in Holmes' case whatsoever.  The undisputed evidence demonstrates that the plaintiffs each testified on *their own behalf* during the investigation of *their* conduct, not Holmes' allegations.

prima facie case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997). If the defendants offer a legitimate reason for the adverse employment action, the presumption of retaliation disappears. *Id*. The plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct. *Olmsted*, 141 F.3d at 1460.

The defendants did offer legitimate reasons for demoting McCurdy and removing McCurdy and Fenderson from the promotion register. The reasons offered by the defendants, failure to adhere to the security agreements on the promotional test and giving false statements, are legitimate, non-retaliatory reasons for the adverse actions. Thus, the plaintiffs were under an obligation to present some evidence to rebut the defendants' reasons for removing them from the promotional register and for demoting McCurdy. It is here that their retaliation claims fail.

> If the employer does so, the plaintiff must rebut that reason with evidence showing that it is a pretext for illegal discrimination. *See Id.* This requires "significant probative evidence" of pretext, not mere conclusory allegations. *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir. 1996) (quotation marks and citation omitted). Further, the focus is on the employer's beliefs rather than the employee's own perceptions. *See Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir. 1997) (per curiam).

*Latrece Lockett v. Choice Hotels Int'l., Inc.*, 315 Fed. Appx. 862, 868-69 (11th Cir. 2009).

The plaintiffs make no argument at all that the defendants' reasons were pretextual. More importantly, however, the plaintiffs present no evidence that the defendants' reasons

for removing them from the register or for demoting McCurdy were pretextual. To defeat the motions for summary judgment, the plaintiffs must present evidence creating a genuine dispute of material fact. They did not. Accordingly, the court concludes that the plaintiffs have failed to meet their burden of establishing that defendants' reasons were pretext for retaliation.

The defendants also argue that because the plaintiffs did not file charges of discrimination with the EEOC in a timely manner, they are now time barred from proceeding in federal court on their Title VII retaliation claims. The plaintiffs assert that because they are pursing retaliation claims, they were not required to file EEOC charges. However, after the Alabama Board of Pardons and Paroles filed its motion for summary judgment, the plaintiffs, on December 17, 2013, filed EEOC charges alleging retaliation. In addition, the plaintiffs assert that because the retaliation is on-going, the EEOC charges filed in December 2013 are timely.[7]

In a non-deferral state, the plaintiffs have 180 days in which to file their charges of discrimination with the EEOC. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1220 (11th Cir. 2001). Alabama is a non-deferral state. *Id. See also, Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). Fenderson and McCurdy must have filed a charge with the EEOC within 180 days the date of the allegedly discriminatory action about which they now complain. 42 U.S.C. § 2000e-5(e); *E.E.O.C. v. Commercial Office Prod. Co.*, 486 U.S. 107, 110 (1988); *Wilkerson*, 270 F.3d at 1317. The date Fenderson was officially notified

---

[7] The plaintiffs do not argue, and the record does not reflect, any basis for equitable tolling.

22

of her removal and ban from the employment registers, November 7, 2012, is the date from which her 180 days is calculated. *See Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1201 (11th Cir. 2003) (date of decision triggers the running of the 180-day period). *See also Cocke v. Merrill Lynch & Co.,* 817 F.2d 1559, 1561 (11th Cir. 1987) (holding that the 180-day period is counted from the date the employee receives notice). Consequently, Fenderson had until May 6, 2013, to file her charge of discrimination with the EEOC. McCurdy was officially notified of his removal from the registers and demotion on December 6, 2012, and this is the date from which his 180 days is calculated. McCurdy had until June 4, 2013, to file his charge of discrimination with the EEOC.

In this circuit, the failure to file charges with the EEOC within the 180-day time period results in a bar of claims contained in the untimely filed charge. *Alexander v. Fulton Cty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000) *overruled on other grounds, Manders v. Lee*, 338 F.3d 1304, 1328 fn 52 (11th Cir. 2003); *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 662 (11th Cir. 1993). The protection of Title VII only applies to those claims of employment discrimination arising within 180 days of the filing of an EEOC charge. 42 U.S.C. § 2000e-5(e)(1). Any claims occurring prior to this 180-day benchmark are untimely.

> Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies. *See Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999). The first step down this path is filing a timely charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(b) (1994); *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000). For a charge to be timely in a non-deferral state . . ., it must be filed within 180 days of the last discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1) (1994); *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 197 (6th Cir. 1995).

*Wilkerson*, 270 F.3d at 1317.  *See also Forehand v. Fla. State Hospital at Chattahoochee*, 89 F.3d 1562, 1567 (11th Cir. 1996) ("Before instituting a Title VII action in federal district court, a private plaintiff must file an EEOC complaint against the discriminating party and receive statutory notice from the EEOC of his or her right to sue the respondent named in the charge."); *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) ("Prior to filing a Title VII action, however, a plaintiff first must file a charge of discrimination with the EEOC.")

The undisputed evidence before the court demonstrates that Fenderson was removed and banned from all employment registers with the State of Alabama on November 7, 2012. The undisputed evidence further demonstrates that McCurdy was notified of his ban and demotion on December 6, 2012.  Fenderson and McCurdy had 180 days from the date of the discrete employment action applicable to each of them to file a charge of discrimination with the EEOC.  Fenderson and McCurdy signed and dated their charges of discrimination on December 17, 2013.[8]

In brief, the plaintiffs assert that "[t]he filing of a charge of discrimination for that retaliation was not necessary.  However, because the retaliatory actions against Plaintiffs are on-going, a charge of discrimination has now been filed by both Plaintiffs."  (Doc. # 45 at 5).  *See also* Doc. # 45 at 9 ("Defendants argue that Plaintiffs must file charges of discrimination, and they have now done so in a timely manner.  Plaintiffs argue that because

---

[8]  This is not a case in which the plaintiffs had charges alleging discrimination pending before the EEOC, and then failed to amend their charges to add a retaliation claim.  The plaintiffs filed their first EEOC charges on December 17, 2013.

of the special nature of their claims, a charge of discrimination is not necessary.")  This is the extent of their response to the motion for summary judgment on the issue of timeliness. The plaintiffs' position is simply contrary to the law of this circuit.  The majority of the plaintiffs' brief addresses the availability of a retaliation claim and the nature of their protected activity under the facts of this case. This argument misses the mark.  Unless the plaintiffs filed timely EEOC charges asserting retaliation, the court cannot reach the merits of their Title VII claims.

The evidence before the court demonstrates that the plaintiffs' EEOC charges were submitted more than 180 days after they received notification of the retaliatory employment actions about which they now complain.  Thus, the court concludes that there is no genuine issue of material fact regarding the timeliness of Fenderson and McCurdy's EEOC charges. Their charges were untimely.

Fenderson and McCordy argue, however, that even if they were required to file charges with the EEOC, because the retaliation is on-going, the charges filed in December 2013 suffice.  The plaintiffs are simply wrong.  "A plaintiff may not sue for an unlawful employment practice under Title VII, such as sexual harassment or *retaliation*, unless she first files a charge of discrimination with the EEOC within 180 days of that unlawful employment practice."  *Gardner v. Aviagen*, 454 Fed. Appx. 724, 726 (11th Cir. 2011).

Moreover, "[t]he 180-day period starts running when the plaintiff receives unequivocal notice of the unlawful employment practice." *Id*. at 727.  The alleged retaliatory actions about which the plaintiffs complain, removal from employment registers and a

demotion, are discrete actions. *See Smithers v. Wynne*, 319 Fed. Appx. 755, 756-57 (11th Cir. 2008) (failure to promote and decisions not to grant pay raise are discrete employment acts). "The clock for the charging period starts when the discrete unlawful practice takes place." *Id*. at 757. In this case, the "retaliatory or discriminatory act "occurred" on the day that it "happened." A party, therefore, must file a charge within . . . 180 . . . days of the date of the act or lose the ability to recover for it." *Nat'l Railroad Passenger Corp*., *v. Morgan*, 536 U.S. 101, 110 (2002). The plaintiffs were required, as a condition precedent to filing retaliation claims pursuant to Title VII, to exhaust their administrative remedies by filing charges of discrimination with the EEOC. This they failed to do. The court concludes that the plaintiffs have failed to meet their burden of establishing that their EEOC charges were timely filed. Accordingly, the court finds that the 180-day limitation period expired prior to Fenderson and McCurdy filing their charges of discrimination.

For all these reasons, the defendants' motions for summary judgment are due to be granted. These claims will be dismissed.

**6.     Counts VII & VIII - State law claims of negligence and breach of employment contracts**.  In response to the defendants' motion for summary judgment on their state law claims, the plaintiffs conceded that these claims are due to be dismissed. *See* Doc. # 44 at 10; Doc. # 47 at 28. Consequently, the defendants' motions for summary judgment on Counts VII and VIII of the plaintiffs' complaint are due to granted and these claims dismissed.

## V.  CONCLUSION

Accordingly, for the reasons as stated, it is

ORDERED and ADJUDGED as follows:

1.      The defendants' motions for summary judgment (docs. # 33, 36, 39 &42) be and are hereby GRANTED;

2.      That the plaintiffs' claims be and are hereby DISMISSED with prejudice;

3.      That all pending deadlines are terminated and all pending motions are hereby DENIED as moot; and

4.      That the costs of this proceeding be and are hereby taxed against the plaintiffs.

A separate judgement will issue.

Done this 17th day of March, 2014.


            /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE